BOWEN W. SIMMONS, Retired Circuit Judge.
Appellant appeals from a judgment entered pursuant to a jury’s conviction on an indictment for possessing heroin, a controlled substance. Section 20-2-23, Code of Ala.1975. The trial court fixed punishment at six years imprisonment in the penitentiary. Section 20-2-70, Code of Ala.1975.
The defendant was discovered by a legal secretary shortly after 2:00 p. m., October 17, 1977, lying on the floor at the entrance of a restroom used by the occupants of the law office of Johnston & Johnston in Huntsville, Alabama.
A police officer, Ronald Adams, while patrolling in a police car in front of the building, heard a police dispatch about the incident. He immediately responded to the call and went to the scene. An ambulance with some medics also reported to the scene about the same time the officer arrived.
Officer Adams found the defendant lying on the floor unconscious or in a comatose *278 state with his feet and legs inside the restroom and the rest of his body outside in the foyer adjacent to the restroom. The defendant’s pants and underwear were down around his ankles. A shirt was on the floor, at or near his feet. Lying on the shirt were certain articles or items as follows: a Bic cigarette lighter, a metal teaspoon, a used hypodermic syringe, a tie that had been tied in the shape of a tourniquet, and five cotton balls on one of which were smudges of a red substance. Also in the immediate area were a pair of sun glasses and a comb. Lying on a shirt in the same area, the officer found a “little tinfoil pack about one inch and a half square. Inside of this tinfoil was a piece of cellophane. Inside of the cellophane was a white substance.” Officer Adams also testified that he saw “what appeared to be needle tracks on both arms of the defendant.”
A state toxicologist testified later in the trial that this white substance contained 86 percent heroin.
The medics took the defendant in their ambulance to the emergency room of a nearby hospital where a nurse promptly gave him a shot of Narcan which was an antidote for narcotics. This was about 2:35 p. m.
The defendant’s family physician, Dr. Robertson, arrived at the hospital about 2:45 p. m. to see the defendant. He testified that he saw defendant promptly; that he was awake, alert, and answered questions well. He testified that, “he would not tell me what he had given himself, if he had.” He also testified that there was no indication that defendant had suffered a heat stroke or heat prostration, or exhaustion. It is to be noted that defendant entered the restroom area from the roof of the building housing the restroom where he had been employed to repair the roof.
Dr. Robertson further testified that according to his notes defendant also had “numerous puncture wounds, both antecubi-tal veins and with induration present.” He explained that “the antecubital areas are these areas of both arms, and the indura-tions mean just firmness.”
Officer Adams, in testifying about seeing the needle tracks on defendant’s arms, also stated that the track on the left arm “was sort of moist and had a little blood on his arm.” He further testified that “there were more marks, but they were not fresh.”
Mr. Thompson, the attorney who went to the scene, testified that he did not see the items that Officer Adams listed that he saw.
There was some conflict in the testimony of the State’s witness relative to the exact position that defendant was lying when found.
Resolution of these conflicts was for the jury.
It appears further in the evidence that Officer Adams, while handling the shirt in which the needle and syringe were wrapped, pricked his finger when it came in contact with the needle’s point. When the officer reached the hospital, he inquired of Dr. Robertson if there was any danger of disease or infection. Dr. Robertson replied that there was a possibility that if the needle had been used several times that Officer Adams “could have hepatitis or something of that nature.” We quote:
“Q. Then, what, if anything occurred?
“A. He turned around to the Defendant—
“MR. McDANIEL: I object.
“THE COURT: Overruled.
“A. And he asked the Defendant if it was a new needle, if it had been used before.
“Q. Was there a response from this Defendant? Yes or no?
“A. Yes.
“MR. McDANIEL: Objection, Your Hon- or.
“THE COURT: Overruled.
“A. Yes, there was.
“Q. What was that response?
“A. The Defendant stated that it was a clean needle.
“Q. Or was it clean or hadn’t been used before?
“A. He stated that it was clean and hadn’t been used before.
*279 “Q. Did he state that or did you just infer it?
“A. He stated it.
“Q. All right, sir. Did you have occasion there to talk with this Defendant? “A. No, sir, I did not talk to him.
“Q. Did you give him his Miranda warnings or rights?
“A. No, sir.
“Q. Did you charge him with any offense?
“A. No, sir, I did not.
“MR. MILLER: We have no other questions at this time.”
It appears that Dr. Robertson had testified that he did not recall having any conversation with defendant “concerning a syringe there.”
Defendant contends, and we think correctly so, that the conversation between him and Dr. Robertson was not a part of the res gestae and, therefore, was not admissible as such. The conversation occurred at a time and place too far removed (namely, the hospital) from the restroom where defendant was lying with the heroin and other items in close proximity to his person. Guntharp v. State, 54 Ala.App. 363, 308 So.2d 722(2). However, the testimony was admissible to which we now allude.
We think that the defendant’s reply, made in the presence of Officer Adams, was an inculpatory statement against interest when considered along with other testimony and was admissible. It could be reasonably inferred from the answer that defendant knew about the needle and its use and that he was in possession of it or had it under his control.
A like inference could be drawn that, if he knew about the needle, he also knew about the other kindred items found along with the needle and that they also were in his possession or under his control.
We do not think that defendant’s statement about the needle was a “confession” that required a predicate of voluntariness. It was, as we have pointed out, a statement against interest.
The Alabama Supreme Court in Tillison v. State, 248 Ala. 199, 27 So.2d 43(6, 7), observed:
“ . . . ‘ . . . Statements of collateral facts, not criminating within themselves, but depending on other and outside evidence, disclosing a chain of circumstances incriminating in character, are not confessions within the rule requiring the laying of a predicate, but are deemed voluntary.’ ”
See also: Heningburg v. State, 153 Ala. 13, 45 So. 246; Herring v. State, 242 Ala. 85, 5 So.2d 104; 6 Alabama Digest, Criminal Law, <s=»531.
We hold that the court was correct in overruling the defendant’s motion to suppress; also in denying his motion to exclude the evidence. The defendant did not take the stand.
We also think and so hold that the testimony of the witnesses presented a question for the jury’s determination as to defendant’s guilt vel non of the charge embraced in the indictment.
There was no motion for a new trial.
The judgment is due to be affirmed; it is so ordered.
The foregoing opinion was prepared by the Honorable BOWEN W. SIMMONS, a Retired Circuit Judge, serving as a judge of this court under the provisions of § 6.10 of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.